Good morning, my name is Ji-Hsien Lee and I represent the petitioner. The BIA in its decision states, we agree with the immigration judge's decision that incidents experienced by petitioner and her immediate family, even when considered cumulatively, do not constitute past prosecution. The BIA then cited page 7 and page 8 of the IJS decision. I have page 7 and page 8 of IJS decision in my hand. I read both pages line by line, word by word, again and again. I just could not tell where did the IJS consider the cumulative effects of all the incidents that are experienced by petitioner and her immediate relative. As a matter of fact, the immigrant judge found no past prosecution because of a lack of credibility For instance, this is the IJS decision. It says respondents, that means petitioner here, respondent assigned a statement about her daughter being kept from Colossus in August 2014 is not to be believed. So therefore, the IJS did not consider the fact that the petitioner's daughter being kept from a school in determining whether or not that event considered, along with other factors, would rise to a level of prosecution. But the IJS simply said there's no past prosecution here because petitioner is not to be believed. So the board may have been wrong in its characterization of what the IJS said, but don't we still have a conclusion by the board? I mean, the board is expressing its own opinion that the incidents experienced by the respondent, even when considered cumulatively, do not constitute past persecution. And so isn't that a factual determination by the board that we have to review for substantial evidence? What exactly the board says, your honor, and what the board says is we agree with the IJS conclusion. So the board did not reach the conclusion. Well, I mean, if you say, you know, I agree with someone else's conclusion that, you know, whatever, I mean, there's really two propositions embedded in that statement. One is, you know, the other person reached this conclusion, and two is, you know, I am reaching this conclusion. And in this context, the first part of that might have been wrong. I mean, I take your point about the IJ not having really quite said that, but I have trouble reading the sentence as anything other than, like, the board is expressing its view of this proposition that the harm doesn't constitute past persecution. And then we look at the BIA's decision itself, and the reason why the BIA did not believe there was a past persecution here, the BIA only said that there's no respect, said two things. One, that the experience, there's no, the prisoner did not experience any family planning procedure, other family planning procedure. And secondly, that there's economic harm, the economic harm that she experienced is insufficient to write to the level of... Let me stop you just a minute. Is there any part of her persecution that the board did not address? Yes, Senator. What? For example, that the physical harm petitioner suffered when she resisting the abortion, and she was... I mean, it seems to me, if I read the paragraph on page, it's the record AR43, and I look at the AR96, and I look at all the things that the BIA looked at, that they're looking at all of the evidence that you say they didn't look at. I mean, I'm trying to figure out what you say they didn't look at, that they should have, that we therefore should then say there's not substantial evidence to sustain what you did. Yeah, first, as I just mentioned, that the petitioner testified that she was slapped so hard that the corner of her mouth was bleeding, it's really on that piece. So the board cites the transcript, and then the transcript, I think, at AR135, the pages that they cite, as Gong says, after I gave birth to my second child, the family planning office fined me. I was forced to have an IUD insertion. While I was pregnant with my third child, I was caught by the family planning office, and they requested having an Does that suggest, then, that the agency did consider the severe slap? Yeah, the BIA cited that portion of the administrative record when the BIA was discussing the IGS conclusion. If we look at the IGS decision, the IGS did not cite that transcript. So therefore, I mean, if you read the, okay, so I guess circling back to Judge Miller's question, if the board, okay, we're reviewing the board's decision. If the board considers the evidence, and the IJ, it's not clear whether the IJ did, why is that a basis to grant the petition? And also, the transcript that the Your Honor just referred to did not say anything about the denial of the social benefits to petitioner's daughter, and the denial of educational opportunity. And also, that portion of the transcript did not say anything about the repeated and specific threats made against petitioner after she fled the country. And also, the IUD insertion and the health impact of IUD, that was not considered either. So, well, I guess in terms of understanding, I understand your claim to be one of the consideration. And so, it may not be that the agency considered every action, but if it considered the most important ones, I think you highlight the assaults on the petitioner at the clinic as being probably the most probative one. If it did consider that, what are we left with if it doesn't consider these remaining pieces? Can we take it to be saying that it doesn't cumulatively amount to past persecution? Well, Your Honor, the standard review is that a given set of undisputed facts to see whether that rise to the level of past persecution. Now, we have two versions of two different sets of undisputed facts. One set is what have you envisioned about BIA in its decision, which excluded the IUD insertion and then the denial of the educational opportunity for the child. So, the BIA actually did not make a decision based on that set of the facts that is in record. But it cites to the part of the transcript where all of that is testified to. So, setting aside the educational opportunities, it testified to the IUD, the fine, and the being beaten up. If we get past past persecution, and we go to future persecution, did Gong offer any evidence at all that she would be subject to sterilization if she returned to China? Well, yes, Your Honor. What? I didn't find any. She testified that the family planning officials went to her house and to talk to her parents-in-law and trying to pressure her to pressure her from returning to China for segregation. And that's the best evidence you have of that? Yes, Your Honor. Okay. You've answered my question, then. You still have just about all your time, but we'll give you two minutes for rebuttal. Let me introduce the court, Joanna Watson, again on behalf of the government. Looking at substantial evidence supports the agency's determination that the harm that petitioner experienced did not rise to the level of persecution. While it's far from ideal what happened, after the birth of her second child, she was required to have an IUD inserted, but there's no indication that it was forcibly done. I believe Lee is one of the cases that talks about rising to the level of past persecution where two nurses held the woman down and forcefully examined her to see if she was pregnant, things like that. I'm trying to figure out the difference between being required to have it done with the understanding that there's maybe an implicit threat of it being forced to do and having it being forced upon you. She uses different terminology. You'll see throughout saying that she was required. None of them suggest that it was forcefully done. And then after the birth of her second child, while she was fine, she conceded before the board that that fine was 58,000 RMB, didn't rise to the level of persecution. They were able to pay the fine. They started businesses. So that's after the birth of the second child. And then with the third child, while it's far from ideal that she was taken in by family planning, and she refused to sign off on aborting her child. And during that incident, she was slapped and not ideal circumstances, but they let her go. And she was able to, you know, she went into hiding for one to Switzerland for a little bit and then into hiding and made it to the United States and was able to birth a healthy child. And all of these things adding up together don't come to rise to the level of past persecution. And ultimately, there's no well-founded fear here. Because I mean, if you have past persecution, there's a presumption, but then the government can, but here we have no past persecution. But in 2016, these policies changed and they allow for two and sometimes three children. And there's evidence in the record that while her U.S. citizen-born child, I believe is around 11 years old now, she may have to pay for education if she doesn't decide to. Because she's a U.S. citizen, she wouldn't be able to get the benefits in China, but she could if she went with her Chinese citizenship, but they'd still be able to go to private school. And her other two children are adults now in their 20s and going to college. And she's almost 50 years old, so the likelihood that she would be required to have a sterilization, you know, it's highly unlikely. And nothing has happened to her husband. Is that a finding the board made, the point about her age and how it interacts with the I was not trying to do a tenery violation here. I understand what you're saying, but I just wanted to put that out there. Because if you look in the record before the board, I have the site right now, she talks about at the time of her, she was pregnant with her third child. She was 37 years old and how she, you know, absolutely didn't want to abort because it might be the last time she'd be able to have another child. So it seems like in this case, it would be highly unlikely that she would. I appreciate your involvement in the issue you're now talking about, but it seemed to me the essence of petitioner's appeal here is that the BIA ignored important evidence in support of the asylum application. That's why I ask him about it, and that's why I'm now turning to you. Okay. I mean, the petitioner says the BIA erred because it ignored the physical harm Gong suffered, ignored credible threats made against Gong, and failed to take into account the threats and harms to Gong's children. And he says that two and three times. Where in the BIA decision can you see that what petitioner is arguing here is false? Well, the board here, you know, when talking about after the birth of her son. I want you to look right at what the board did and tell me how did they take into account the physical harm Gong suffered. I can tell you that. On page two of the board decision AR4, the board talks about after the birth of her second child, she's forced to submit to birth control. Excuse me. That's on page two? Right. And the board cites to the IJ at three. And the IJ three is exactly where the immigration judge, in summarizing the testimony and everything that happened in this case, talks about how she was forced to, they tried to force her to sign a consent for abortion and talks about how she refused the fingerprints. Where do they? AR91. I'm referring, the board references the immigration judge's decision at on page three, which is AR91. I've got it. And on that page, the second to last, or the the last full paragraph, discusses the harm, all the harm that happened to her. But we're talking about specific harms. First, the physical harm Gong suffered, and I appreciate where he went. The next was the credible threats made against Gong. Where do they talk about those? Well, the immigration judge. We're not talking the immigration judge. We're talking the BIA decision here. It cites to the transcript where she talks about what happened to her. I mean, all those transcript citations refer to everything that happened. The fines that she had, the IUD insertion, everything that happened to her. Where does it discuss the threats to the children? Where does it discuss the threats and harms to Gong's children was my next question. Well, there wasn't threats to the children. I mean, her son, when her son was born. The denial of benefits, I think. Right. And she conceded that she paid the fine, and then her son was able to have access to all the benefits. And she conceded that that fine didn't rise to the level of persecution before the board. Okay, I'm glad to have your answer. And there's no further questions. I would ask the court to uphold the agency's determination that there's no past persecution and that the well-founded fear has been, there is no well-founded fear now that the population control policy has changed. Thank you very much. Thank you.  I just want to address the future persecution part. In this case, the BIA actually found there's no well-founded fear of persecution because that her fear of going back is objectively unreasonable. And for the BIA to reach that conclusion, the BIA relied exclusively on the channel country background information, the report. And the report, actually the report supports respondents' claim that she would have faced, based on the record at the time, that she would have faced tribulation because she clearly testified that the family went to her house and to talk to her parents and trying to get her back to China for tribulation. And also, to achieve that goal, they did not allow her daughter to go to school. So, and also the country report, this page 223 of the administration record, it clearly says that the Chinese government is still relying on forced abortion to implement its now two-child policy. And in this case, Your Honor, that the petitioner has three children. So therefore, clearly, that she has at least, based on the country condition, that her fear of going back to China and face the possibility, the one in ten chance of possibility of tribulation is objectively reasonable. Thank you, Your Honor. Thank you, Mr. Lee. Ms. Watson, for your arguments and the case is submitted.
judges: SMITH, MILLER, JOHNSTONE